J-A24031-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAITLYN N. WOLFEL | : | No. 1357 WDA 2016 |

Appeal from the Order August 19, 2016
in the Court of Common Pleas of Cameron County
Criminal Division at No(s): CP-12-CR-0000040-2015

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED JANUARY 12, 2021

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to Suppress a blood alcohol content ("BAC") test filed by Kaitlyn N. Wolfel ("Wolfel"). This case returns to this Court upon remand from the Pennsylvania Supreme Court. See Commonwealth v. Wolfel, 233 A.3d 784 (Pa. 2020). Upon further review, we affirm the Order of the trial court.

On December 21, 2014, Wolfel, while operating her vehicle, struck two pedestrians in Cameron County, Pennsylvania. One of the pedestrians sustained serious injuries, and the other was pronounced dead at the scene. When police arrived, Pennsylvania State Police Trooper Josiah Reiner ("Trooper Reiner") asked Wolfel to perform a field sobriety test, which she performed poorly. Wolfel thereafter submitted to a portable breath test. Subsequently, Wolfel was placed under arrest on suspicion of driving under

the influence ("DUI").  The police transported Wolfel to the Cameron County Health Center for a BAC test.  At the hospital, Trooper Reiner read Wolfel the O'Connell[1] and implied consent warnings, as contained on the Pennsylvania State Police DL-26 form, after which Wolfel consented to a BAC test.  Wolfel subsequently was charged with the following offenses:  homicide by vehicle while DUI;  aggravated assault by vehicle while DUI;  DUI of alcohol or controlled substance;  DUI of alcohol or controlled substance with a BAC of .178%;  DUI of alcohol or controlled substance; and careless driving.[2]  Prior to trial, Wolfel filed a Motion to Suppress the results of the BAC test, based upon the United States Supreme Court's holding in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).[3]

On allowance of appeal, our Supreme Court summarized the pre-trial suppression proceedings as follows:

_____

[1] In Commonwealth v. O'Connell, 555 A.2d 873 (Pa. 1989), the Pennsylvania Supreme Court held that when a motorist is required to submit to chemical testing under the provisions of Pennsylvania's Implied Consent Law, 75 Pa.C.S.A. § 1547, the law enforcement officer making the request has a duty to explain to the motorist that the rights provided by the United States Supreme Court decision in Miranda v. Arizona, 384 U.S. 436 (1966), are inapplicable to a request for chemical testing under the Implied Consent Law.

[2] See 75 Pa.C.S.A. §§ 3735(a); 3735.1(a); 3802(a)(1), (c), (d)(3); 3714(a).

[3] Wolfel had previously filed a Motion to suppress the BAC test on the basis that the sample was drawn after the expiration of the two-hour testing window provided by 75 Pa.C.S.A. § 3802(a)(2).  However, that suppression Motion was denied, and is not at issue in this appeal.

In 2016, while the present case remained at the pretrial stage, the Supreme Court of the United States issued its decision in Birchfield .... Birchfield held, among other things, that consent to a warrantless blood draw is vitiated when such assent follows the administration by police of a warning of enhanced criminal penalties upon refusal of the testing. See id. at [] 2186 ("[M]otorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense[.]"). [Wolfel] then lodged a [M]otion contending, in very general terms, that Birchfield required suppression of the blood evidence. See Motion to Suppress Commonwealth v. Wolfel[,] dated July 25, 2016, No. CP-12-CR-40-2015 (C.P. Cameron), at 1 ([stating that] "the United States Supreme Court, in Birchfield v. North Dakota, held that the Fourth Amendment does not permit warrantless blood tests.").

At a hearing before the suppression court, [Wolfel's] position was refined to encompass Birchfield's recognition of the heightened coerciveness when an arrestee is warned of enhanced criminal penalties inuring upon a refusal of chemical testing. See N.T., Aug. 12, 2016, at 20. The Commonwealth, on the other hand, asserted that Birchfield shouldn't be retroactively applied to [Wolfel's] circumstances, particularly given that police acted in good faith by merely advising her of the enhanced-penalty provisions embedded in the governing statutory regime. See id. at 4-5, 21-23.

The suppression court nonetheless awarded the exclusionary remedy, and the Commonwealth lodged an interlocutory appeal as of right. See Pa.R.A.P. 311(d). In an ensuing [O]pinion, the suppression court found the contested legal issue to be one of first impression. The [suppression] court noted, however, that retroactive application had been assumed in the Superior Court's decision in Commonwealth v. Evans, 153 A.3d 323 (Pa. Super. 2016) (awarding a new trial based on a Birchfield violation)....

Wolfel, 233 A.3d at 787. Thereafter, the Commonwealth filed a timely Notice of Appeal.

Before this Court, the Commonwealth had raised the following claim for our review: "Did the [trial] court err in suppressing the results of the testing

- 3 -

of [Wolfel's] blood[,] after a fatal, suspected DUI motor vehicle accident[,] on the basis of the United States Supreme Court's decision in Birchfield v. North Dakota?" Brief for the Commonwealth at 4 (some capitalization omitted).

The Commonwealth argued that, because Birchfield was not decided until June 23, 2016, the warnings in the DL-26 form were valid at the time Trooper Reiner provided them to Wolfel, on December 21, 2014. Brief for the Commonwealth at 10. The Commonwealth argued that, because the United States Supreme Court recognized a "good faith exception" to the general rule of exclusion of the fruits of illegal police conduct, established in criminal cases as a remedy for searches and seizures deemed illegal under the Fourth Amendment to the United States Constitution, this Court should recognize an exception to the exclusionary rule in this case. See Brief for the Commonwealth at 10-11 (citing to exceptions recognized in U.S. v. Leon, 468

U.S. 897 (1984),[4] and Illinois v. Krull, 480 U.S. 340 (1987)).[5]

The Commonwealth conceded that, in Commonwealth v. Edmunds, 586 A.2d 887, 905-06 (Pa. 1991), our Supreme Court held that Article I, Section 8 of the Pennsylvania Constitution does not incorporate a "good faith exception" to the exclusionary rule. Brief for the Commonwealth at 12. While the Commonwealth did not claim that Edmunds was improperly decided, it posited that Edmunds should not apply to the instant case. Id. at 13. According to the Commonwealth, "Birchfield was decided solely on the basis of federal Fourth Amendment jurisprudence[,] and Article I, Section 8 of the Pennsylvania Constitution played no part in that decision." Brief for the Commonwealth at 14.

_____

[4] In Leon, the Supreme Court held that, where a police officer conducts a search in objective good faith reliance upon a search warrant duly issued by a magistrate or judge, the Fourth Amendment does not require exclusion of evidence found pursuant to the warrant, even if it is later determined that there was no probable cause for the warrant to issue. Leon, 468 U.S. at 926. The Supreme Court considered that the deterrence goal of the federal exclusionary rule based on the Fourth Amendment would not be served by applying it in circumstances where officers have properly relied on a subsequently invalidated search warrant. Id.

[5] In Krull, police conducted a warrantless administrative search pursuant to a state statute, which was later determined to be unconstitutional. Nonetheless, the Supreme Court of the United States held that the good-faith exception to the exclusionary rule applied because the officer acted in an objectively reasonable manner in relying upon the subsequently invalidated statute. Krull, 480 U.S. at 349-51.

The Commonwealth argued that, because Wolfel had couched her suppression Motion solely as a Birchfield issue, this case should have been determined upon Fourth Amendment jurisprudence, without consideration of the Pennsylvania Constitution. Id. at 14. The Commonwealth asserted that application of Fourth Amendment jurisprudence, without consideration of Article I, Section 8 of the Pennsylvania Constitution, "would allow for the possibility of a good faith exception to the exclusionary rule as described in Krull and Leon, supra." Brief for the Commonwealth at 15.

This Court ultimately reversed the Order of the suppression court. See Commonwealth v. Wolfel, 181 A.3d 1285 (Pa. Super. 2017) (unpublished memorandum). As our Supreme Court summarized, on subsequent allowance of appeal,

> [i]nitially, the [Superior Court] repeatedly highlighted that, at the time at which [Wolfel] lent her consent to the testing, the warnings about increased criminal penalties were "legally correct." But again, the intermediate court decided the case based on issue-preservation considerations rather than on the merits.
>
> In this respect, the Superior Court explained that [Wolfel] had never sought suppression under Article I, Section 8 of the Pennsylvania Constitution, and therefore, the only relevant protections were those available under the Fourth Amendment to the United States Constitution. In such circumstances, the Superior Court found, the good-faith exception to the federal exclusionary rule clearly applied.
>
> Appeal was allowed to consider the issue, as framed by [Wolfel], of: "Whether the Superior Court of Pennsylvania disregarded the controlling authority of Birchfield ..., by reversing the trial court's decision suppressing the results of the testing of [Wolfel's] blood." Commonwealth v. Wolfel, ... 206 A.3d 491 ([Pa.] 2019) (per curiam).

- 6 -

Wolfel, 233 A.3d at 788.

Ultimately, the Pennsylvania Supreme Court reversed this Court, concluding the following, in relevant part:

> [T]he Commonwealth waived its challenge to [Wolfel's] failure to raise a claim under Article I, Section 8, by failing to challenge the suppression court's explicit invocation of that provision before the Superior Court. Notably—upon the Commonwealth's entreaty–[the Supreme] Court recently enforced waiver against a criminal defendant for failing to properly raise and preserve a Birchfield-related issue. See Commonwealth v. Hays, … 218 A.3d 1260, 1266-67 (Pa. 2019). Here, we afford evenhanded treatment to the Commonwealth.
>
> Since the Superior Court's sua sponte finding of waiver on [Wolfel's] part is unsustainable, we will remand for that [C]ourt to effectuate the alternative resolution to which the intermediate court itself referred. See [Commonwealth v.] Wolfel, No. 1357 WDA 2016, 2017 Pa. Super. Unpub. LEXIS 4800, at *9, 2017 WL 6629411, at *4 n.8 (explaining that, absent the asserted waiver on [Wolfel's] part, "we would have affirmed the suppression court's Order").

Wolfel, 233 A.3d at 790.

Thus, pursuant to our Supreme Court's decision, the Commonwealth's claim that Wolfel had waived her challenge to the blood draw based upon Article I, Section 8 of the Pennsylvania Constitution is, itself, waived. See id.

As this Court has explained,

> [w]hen reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. We may only consider evidence presented at the suppression hearing. In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read

in the context of the record as a whole. We may reverse only if the legal conclusions drawn from the facts are in error.

Commonwealth v. Haines, 168 A.3d 231, 234 (Pa. Super. 2017) (internal citations and quotation marked omitted). Where the suppression court's factual findings are supported by the record, we are bound by those findings, and may reverse only if the suppression court's legal conclusions are erroneous. See Commonwealth v. Palmer, 145 A.3d 170, 173 (Pa. Super. 2016).

Upon review, in accordance with our Supreme Court's directive, we agree with the sound reasoning of the suppression court, as set forth in its Opinion, and affirm on this basis with regard to the Commonwealth's claim. See Suppression Court Opinion, 2/21/17, at 1-3 (unnumbered).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021

- 8 -

IN THE COURT OF COMMON PLEAS OF THE FIFTY-NINTH
JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | * | COUNTY BRANCH – CAMERON |
| | * | |
| vs. | * | CIVIL |
| | * | |
| KAITLYN N. WOLFEL | * | CP-12-CR-40-2015 |

**TRIAL COURT OPINION PURSUANT TO Pa. R.A.P. 1925(a)**

The Commonwealth, by the Office of Attorney General, filed a Notice of Appeal in the above matter on September 12, 2016. The appeal is from this Court's Order of August 19, 2016. Following a suppression hearing on The Defendant's Motion To Suppress Blood Test, pursuant to *Birchfield v. North Dakota*, 136 S. Ct. 2150 (2016), this Court granted said motion and suppressed all evidence flowing from said blood test.

The Defendant had been charged with Homicide by Vehicle While Driving Under the Influence, 75 Pa.C.S.A. § 3735 (a); Aggravated Assault by Vehicle while Driving Under the Influence, 75 Pa.C.S.A. § 3735.1 (a); Driving Under the Influence of Alcohol or Controlled Substance, 75 Pa.C.S.A. § 3802(a)(1); Driving Under the Influence of Alcohol or Controlled Substance with a BAC of .178%, 75 Pa.C.S.A. § 3802 (c); Driving Under the Influence of Alcohol or Controlled Substance, 75 Pa.C.S.A. § 3802(d)(3) and Careless Driving, 75 Pa.C.S.A § 3714(a). The charges resulted from an accident that occurred in Cameron County, Pennsylvania, on March 16, 2015. After the Defendant failed a field sobriety test, failed a portable breath test and was given the "O'Connell warnings," the Defendant consented to a blood draw. The O'Connell warnings threatened a criminal penalty if the Defendant would refuse the blood draw and would plead guilty or be found guilty of driving under the influence.

The Attorney General's Office filed a Concise Statement of Errors Complained of on Appeal on October 16, 2015, in which, it is alleged this Court erred in "concluding that suppression/exclusion of the Defendant's blood alcohol content and the evidence flowing from that test was required by *Birchfield v. North Dakota*. When the police acted in good faith reliance on the legal authority that was in effect at the time of the collection of the blood sample, *Birchfield* should not be applied retroactively to exclude evidence obtained prior to its decision." The retroactive application of *Birchfield* is one of first impression. There are no appellate

decisions where the specific issue of retroactivity is addressed. However, retroactivity is assumed in *Commonwealth v. Evans*, 2016 Pa. Super. 293 (2016).

In *Evans*, the defendant consented to a blood draw after he was given the standard O'Connell warnings used by police departments in Pennsylvania. The standard O'Connell warnings used in *Evans* were the same given to Defendant in the instant case. Defendant Evans was warned that "because of your refusal you will be subject to more severe penalties...as if you were – if you would be convicted at the highest rate of alcohol, which can include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00 to a maximum of (five) years in jail and a maximum fine of $10,000.00." *Evans*, 2016 Pa. Super 293. The court in *Evans* cited *Birchfield* and held that the trial court had erred in denying the suppression motion, because Evans only consented to the blood draw after being warned of criminal penalties. "Since *Birchfield* held that a state may not 'impose criminal penalties on the refusal to submit to a warrantless blood) test,' the police officer's advisory to Appellant was partially inaccurate. Therefore, we must vacate Appellant's judgment of sentence", vacate the suppression order, and remand to reevaluate Evans's consent "based on the totality of all the circumstances" *Evans*, 2016 Pa. Super. 293.

In *Evans*, the court did not discuss retroactivity, as it was not considered to be an issue. The circumstances under which the blood was drawn in *Evans* are on point with the facts of the instant case. The O'Connell warnings, including the criminal penalties, were read to both defendants by police officers and both defendants then consented to the blood draws. These events occurred prior to the *Birchfield* decision; therefore, the police officers were acting in good faith in accordance with the case law and statutory law in effect at the time. After blood was drawn and the laboratory reports completed, the *Birchfield* decision came down. In *Evans*, the defendant had been tried, found guilty and sentenced, after which he filed an appeal alleging the trial court's error in denying his motion to suppress the results of the blood test prior to the bench trial. The Superior Court in *Evans* vacated the sentence and remanded the case back to the trial court in order to evaluate the consent given by the defendant under the totality of the circumstances. This was the same action taken by the U. S. Supreme Court in *Birchfield*.

In the instant case, the suppression hearing was held after *Birchfield* had been decided and had become the law of the land. Therefore, this Trial Court based its decision on the holding of *Birchfield* and knew to consider all the circumstances of the arrest, warnings, and blood draw.

This Court had before it all the evidence which could come under the term, "totality of the circumstances." Therefore, this Court was prepared to render its decision on the suppression with no need for further evidence.

It is also significant that the decision was based on the fundamental constitutional right of an individual to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Pa. Const. Art. 1, § 8. It would be unconscionable for this court to hold that defendants who were deprived of such a fundamental right prior to June 23, 2016, and had not yet been tried, were not protected by the Fourth Amendment and that only those whose warrantless search took place after said date would be protected by its safety net.

For the above reasons, the Honorable Justices of the Superior court are requested to affirm the decision of this court now being appealed.

BY THE COURT:

William F. Morgan, Senior Judge Specially Presiding